COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                NO.  2-09-167-CV

 

 

JMW PARTNERS, L.P., DANIEL                                                      APPELLANTS

MCDONALD, AND MARC WILSON

 

                                                             V.

 

NORTHSTAR BANK OF TEXAS                                                           APPELLEE

 

                                                       ------------

 

               FROM
THE 367TH DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. 
Introduction








In a
single issue, Appellants Daniel McDonald and Marc Wilson, guarantors of two
loans by Appellee Northstar Bank of Texas (ANorthstar@) to JMW
Partners, L.P. (AJMW@),[2]
assert that the trial court erred by granting summary judgment in favor of
Northstar.  The trial court decreed (1)
McDonald and Wilson jointly and severally liable for 100 percent of JMW=s 2005
loan from Northstar, and (2) McDonald and Wilson each severally liable for
33.33 percent of JMW=s 2007 loan from Northstar.  

Appellants
contend that the 2007 guaranty agreements superseded the 2005 guaranty
agreements and limited each Appellant=s share
of liability to 33.33 percent of both debts JMW owed Northstar.  We affirm the summary judgment as to the 2007
loan, but reverse the summary judgment as to the 2005 loan and remand that
claim for new trial. 

II.  Factual
Background

JMW
signed a promissory note to Northstar dated June 28, 2005, in the amount of
$162,500.  The note provides that it would
be secured by  unlimited personal
guaranties executed by McDonald, Wilson, and Greg Johnson.  Each individual signed a guaranty agreement
dated June 28, 2005, whereby each jointly and severally guaranteed all of the
indebtedness  JMW owed Northstar, including
the indebtedness it owed under the note of the same date.  The 2005 guaranty agreements define AGuaranteed
Indebtedness@ as








[A]ll obligations, indebtedness, and liabilities of Borrower owed to
Lender, now existing or hereafter created, acquired, or
incurred, . . . including, without limitation, the
obligations, indebtedness and liabilities of Borrower under that certain
Promissory Note dated of even date herewith in the principal amount of
$162,500, signed by Borrower and payable to the order of Lender and all
interest accruing thereon and all attorney=s fees and other expenses incurred in the
enforcement or collection thereof. 

 

The 2005 guaranty agreements further provide:

 

2.   This instrument shall be an absolute, continuing, irrevocable and
unconditional guaranty of payment and performance and . . . Guarantor shall
remain liable on the obligations thereunder until the payment and performance
in full of the Guaranteed Indebtedness.

 

5.   Guarantor hereby agrees that his obligations under this Agreement
shall not be released, diminished, impaired, reduced, or affected by the
occurrence of any reason or event, including, without limitation, one or more
of the following events, whether or not with notice to or the consent of
Guarantor:

 

. . . . 

 

d.  Any renewal, extension, modification, waiver,
amendment or rearrangement of any or all of the Guaranteed Indebtedness or any
instrument, document, or agreement evidencing, securing or otherwise relating
to any or all of the Guaranteed Indebtedness. 

 

Eighteen
months later, JMW executed a second note payable to Northstar dated January 1,
2007, for additional funds in the amount of $168,071.73. McDonald, Wilson, and
Johnson each signed a second guaranty agreement also dated January 1, 2007.  The 2007 guaranty agreements state,

[f]or good and valuable
consideration, Guarantor absolutely and unconditionally guarantees full and
punctual payment and satisfaction of Guarantor=s Share of the
Indebtedness of Borrower to Lender, and the performance and discharge of all
Borrower=s obligations under the
Note and the related documents. [Emphasis added.] 








The 2007
guaranty agreements define ANote@ as all
of ABorrower=s loan
obligations in favor of Lender, together with all renewals of, extensions of,
modifications of, refinancings of, consolidations of and substitutions for
promissory notes . . . .@ 
The term Arelated documents@ is
defined as Aall promissory notes, credit
agreements, loan agreements, . . . guaranties, . . . 
and all other instruments, agreements and documents, whether now or hereafter
existing, executed in connection with the indebtedness.@  However, the 2007 guaranty agreements limit
each guarantor=s liability to 33.33 percent of
JMW=s AIndebtedness@ to
Northstar, as follows:

GUARANTOR=S SHARE OF THE
INDEBTEDNESS:  The words >Guarantor=s Share of the
Indebtedness= as used in this Guaranty
mean 33.330% of the principal amount of the Indebtedness that is outstanding
from time to time and at any one or more times. 
>Guarantor=s Share of the
Indebtedness= also includes all accrued
unpaid interest on the Indebtedness and all collection costs, expenses, and
Lender=s reasonable attorneys= fees . . . . 

 








As in the
previous agreements, the 2007 guaranty agreements define AIndebtedness@ as Aall of
the principal amount outstanding from time to time and at any one or more
times,@ together
with accrued interest, collection costs and legal expenses, and Lender=s
reasonable attorneys= fees, Aarising
from any and all debts, liabilities and obligations of every nature or form,
now existing or hereafter arising or acquired, that Borrower individually or
collectively or interchangeably with others, owes or will owe Lender.@  The term AIndebtedness@
specifically includes . . . Aloans,
advances, debts, . . . and liabilities of Borrower, and . . . future advances,
loans or transactions that renew, extend, modify, refinance, consolidate or
substitute these debts, liabilities and obligations . . . .@ 

The 2007
guaranty agreements do not specifically reference the 2007 Note which had been
executed on the same date, with the exception that ALoan No.
44518" (the loan number for the 2007 note) is typed or printed in the
upper left hand corner of pages two and three of each 2007 guaranty
agreement.  Nor do the 2007 guaranty
agreements specifically reference the 2005 note or its guaranty
agreements.  Instead, the 2007 guaranty
agreements provide:

If Lender
presently holds one or more guaranties, or hereafter receives additional
guaranties from Guarantor, Lender=s rights
under all guaranties shall be cumulative. 
This Guaranty shall not (unless specifically provided below to the
contrary) affect or invalidate any such other guaranties.  Guarantor=s
liability will be Guarantor=s
aggregate liability under the terms of this Guaranty and any such other
unterminated guaranties. [Emphasis added.]  


                                        III.  Procedural Background








After JMW
defaulted on payments under both notes, Northstar filed its original petition
seeking recovery of the balance owed on both notes from JMW and alleging joint
and several liability for the entire balance owed under both notes by McDonald,
Wilson, and Johnson as guarantors of both notes.  Northstar filed an Amended Motion for Summary
Judgment and later filed a Supplemental Motion for Summary Judgment[3]
seeking judgment against the maker and guarantors jointly and severally for the
amount of the balance owed on the 2005 note but seeking only several liability
against each guarantor for 33.33 percent of the balance owed on the 2007
note.   

By
counter-claims, cross-motions for summary judgment, and a combined response to
Northstar=s amended and supplemental motion
for summary judgment, Appellants and JMW alleged that the 2007 guaranty
agreements Asuperseded@ the 2005
guaranty agreements, thereby limiting Appellants=
obligations under both the 2005 and 2007 agreements to several liability of
33.33 percent of the amounts owed under both notes.  Following a hearing, the trial court entered
summary judgment against the guarantors for (1) joint and several liability on
the balance owed under the 2005 Note, and (2) several liability of 33.33
percent per guarantor on the debt remaining under the 2007 Note.[4]


IV.  Discussion








Appellants
contend that the trial court erred in granting summary judgment to Northstar on
the 2005 guaranty agreements for joint and several liability of Appellants as
to the entire amount owed on the 2005 note. 
They argue that the only reasonable interpretation of the 2007 guaranty
agreements is that they supersede the 2005 guaranty agreements, and that the
33.33 percent limitation on Appellants=
liability in the 2007 guaranty agreements applies to their obligations as
guarantors as to the 2005 Note as well as the 2007 Note.   

Alternatively,
Appellants assert that the guaranty agreements are ambiguous, and that under
the rule of strictissimi juris applicable to guaranty agreements, the
trial court must apply the more favorable interpretation to them and limit each
guarantor=s indebtedness to 33.33 percent
of JMW=s
indebtedness under both notes.  
Northstar responds that there is only one reasonable interpretation of
the guaranty agreements, that the terms of the 2007 guaranty agreements
limiting each guarantor=s obligation to 33.33 percent of
liability apply only to the 2007 note, and that the 2005 guaranty agreements
remain enforceable for Appellants= joint
and several liability for the entire amount owed under the 2005 note.  

              A.  Standard of Review








In a
traditional summary judgment case, the issue on appeal is whether the movant
met the summary judgment burden by establishing that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of
law.  Tex. R. Civ. P. 166a(c); Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  We review a summary
judgment de novo.  Id. The summary
judgment will be affirmed only if the record establishes that the movant has
conclusively proved all essential elements of the movant=s cause
of action or defense as a matter of law. 
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979).  Once the movant establishes
that he is entitled to judgment as a matter of law, the burden shifts to the
nonmovant to present evidence raising a genuine issue of material fact.  Id. 
A nonmovant who wishes to assert an affirmative defense must urge it in
the response and provide enough evidence to create a fact issue on each element
of the defense.  Rabe v. Dillard=s, Inc., 214
S.W.3d 767, 768 (Tex. App.CDallas
2007, no pet.).  

B.  Rules of Guaranty Construction and
Interpretation 








We
construe a guaranty as any other contract. 
Mid-South Telecomm. Co. v. Best, 184 S.W.3d 386, 390 (Tex. App.CAustin
2006, no pet.).  Our primary concern is
to ascertain the intent of all parties as expressed in the contract.  Don=s Bldg.
Supply, Inc. v. OneBeacon Ins. Co., 267 S.W.3d 20, 23 (Tex.
2008).  The construction of an
unambiguous contract is a question of law for the court to determine de novo.  Buys v. Buys, 924 S.W.2d 369, 372 (Tex.
1996) (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)).  We examine the entire document and consider
each part with every other part so that the effect and meaning of one part on
any other part may be determined.  Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).  We interpret the contract by ascertaining the
true objective intentions of the parties, based on the contract language, and
presuming that the parties intended every clause to have some effect.  SAS Inst., Inc. v. Breitenfeld, 167
S.W.3d 840, 841 (Tex. 2005); Heritage Res., Inc., 939 S.W.2d at
121.  We give words their plain, common,
or generally accepted meaning unless the instrument shows that the parties used
them in a technical or different sense.  Heritage
Res., Inc., 939 S.W.2d at 121.








Appellants
contend that guaranty agreements differ from other contracts in that the rule
of strictissimi juris applies, which requires that a guaranty agreement
be strictly construed in favor of the guarantor, citing Reece v. First State
Bank of Denton, 566 S.W.2d 296, 297 (Tex. 1978).  However, this rule only applies when ordinary
rules of contract construction render the parties=
obligations uncertain or ambiguous.  Coker,
650 S.W.2d at 393 n.1; Pham v. Mongiello, 58 S.W.3d 284, 288 (Tex. App.CAustin
2001, pet. denied).  A contract is
ambiguous when its meaning is uncertain and doubtful or when it is reasonably
susceptible to more than one meaning.  Coker, 650 S.W.2d at 393; Pham, 58
S.W.3d at 288.  That the parties to a
contract disagree over the interpretation of the contract does not necessarily
render it ambiguous.  Pham, 58
S.W.3d at 288.  Likewise, uncertainty or
a lack of clarity in the language used in the contract does not automatically
render it ambiguous.  Id.  And an ambiguity does not arise simply
because the parties advance conflicting interpretations; rather, for an
ambiguity to exist, both interpretations must be reasonable.  Lopez v. Munoz, Hockema & Reed, L.L.P.,
22 S.W.3d 857, 861 (Tex. 2000); Sefzik v. Mady Dev., L.P., 231 S.W.3d
456, 460 (Tex. App.CDallas 2007, no pet.).  An ambiguity exists only after application of
established rules of interpretation leaves an agreement susceptible to more
than one reasonable interpretation.  DeWitt County Elec. Coop. Inc. v. Parks, 1
S.W.3d 96, 100 (Tex. 1999). 

C.  Whether the 2007 Guaranties Limit Appellants= Liability Under the 2005
Guaranty Agreements

 








The 2005
guaranty agreements were executed at the same time as the 2005 note, and the
parties do not disagree that the 2007 guaranty agreements were executed
contemporaneously with the 2007 note. 
While the 2007 guaranty agreements do not specifically reference the
2007 note, the 2005 note, or the prior guaranty agreements, we may consider
together all writings relating to the same transaction, even if they were
executed at different times.  Id.
at 102.  AUnder
generally accepted principles of contract interpretation, all writings that
pertain to the same transaction will be considered together, even if they were executed
at different times and do not expressly refer to one another.@  Id., see also Miles v. Martin, 159 Tex.
336, 321 S.W.2d 62, 65 (1959) (holding writings relating to same transaction
may be considered together unless surrounding circumstances indicate different
intent); IP Petroleum Co. v. Wevanco Energy, L.L.C., 116 S.W.3d 888, 898
(Tex. App.CHouston [1st Dist.] 2003, pet.
denied) (op. on reh=g) (considering earlier joint
operating agreement and later participation agreement pertaining to same
operation together to determine whether one superseded the other).  Under Appellants= theory,
the 2007 guaranties relate at least in part to the earlier transaction by
altering their obligations under the earlier guaranties; thus, we will consider
all four documents together in determining the intent of the parties.  See Parks, 1 S.W.3d at 102.  

The terms
of the 2005 guaranty agreements show the continuing nature of those
agreements.  A continuing guaranty
contemplates a series of future transactions such that the guaranty remains in
effect for an indefinite time or until revoked. 
Houston Furniture Distribs., Inc. v. Bank of Woodlake, N.A., 562
S.W.2d 880, 884 (Tex. Civ. App.CHouston
[1st Dist.]  1978, no writ).  Under the 2005 guaranty agreements, each
Appellant also agreed that his obligations would be Airrevocable.@  They further agreed that their obligations
under the 2005 guaranty agreements would not be Areleased,
diminished, impaired, reduced, or affected
by . . . modification . . . of any or
all of the Guaranteed Indebtedness or any instrument, document, or agreement
evidencing, securing or otherwise relating to any or all of the Guaranteed Indebtedness.@  This language indicates that the 2007
guaranty agreements were not intended to supersede the 2005 agreements.








        Additionally,
the 2007 guaranties contained no specific language that superseded, modified,
or affected the previous guaranties.  To
the contrary, the 2007 guaranties specifically stated that they did  not Aaffect or
invalidate@ any other guaranties Apresently
[held] by Lender@ but would be Acumulative@ of any
other such guaranty agreements, and the guarantors=  liability would be their Aaggregate@
liability under the 2007 guaranties and any such other unterminated
guaranties.  These provisions further
reinforce a conclusion that the later guaranty agreements were not intended to
supersede the earlier guaranties in whole or in part.     

Considering
the two sets of agreements together, the language of both sets of guaranty
agreements can reasonably be read to mean that Northstar=s rights
under the 2005 and 2007 guaranty agreements continue to exist simultaneously,
and that the reduction in each guarantor=s share
of liability under the 2007 agreements did not affect, modify, or supersede
their joint and several liability under the 2005 agreement for the entire
balance owed under the 2005 note. 
However, Appellants contend that, considering other language  of the guaranty agreements, they may be
reasonably interpreted such that the terms of the later guaranties superceded
the earlier guaranties.  We agree.    








When two
contracts between the same parties are so inconsistent that they cannot subsist
together, it will be conclusively presumed that the later contract supersedes
the earlier contract.  Willeke v.
Bailey, 144 Tex. 157, 189 S.W.2d 477, 479 (1945) (holding where contracts
are so inconsistent that both cannot subsist together, Athe
[contract] made first is conclusively presumed to have been superseded by the
other@); IP
Petroleum Co., 116 S.W.3d at 899 (holding joint operating agreement
superseded participation letter agreement where they were so mutually
inconsistent that both could not stand); Savitch v. Sw. Bell Yellow Pages,
Inc., No. 2-04-257-CV, 2005 WL 1839092, at *3 (Tex. App.CFort
Worth Aug. 4, 2005, no pet.) (holding that, although new agreement may
establish novation as matter of law if reasonable minds cannot differ as to its
effect, evidence supported trial court finding that no novation occurred as
result of new contract).   

In
absence of such inconsistent provisions as will constitute an implied novation,
a second contract will supersede or operate as a novation of the first only
when the parties to both contracts intend and agree that the obligations of the
second contract will be substituted for and operate as a discharge of the
obligations of the earlier agreement. Chastain v. Cooper & Reed, 152
Tex. 322, 257 S.W.2d 422, 424 (1953) (holding evidence of conduct and acts of
parties established intent that contract with new party constituted novation
and release of former debtor as matter of law); CTTI Priesmeyer, Inc. v. K
& O Ltd. P=ship, 164
S.W.3d 675, 681 (Tex. App.CAustin
2005, no pet.) (holding evidence supported jury=s finding
that later agreement was not intended to replace earlier contract absent
express language of novation or inconsistent provisions).[5]









A
subsequent agreement does not supersede a prior agreement if it is not
inconsistent with the prior agreement, is made for separate consideration, or
is such an agreement as might naturally be made as a separate agreement by
parties situated as were the parties to the written agreement.  Hubacek v. Ennis State Bank, 159 Tex.
166, 317 S.W.2d 30, 33 (1958); Fish v. Tandy Corp., 948 S.W.2d 886, 898
(Tex. App.CFort Worth 1997, writ denied); Boy
Scouts of Am. v. Responsive Terminal Sys., Inc., 790 S.W.2d 738, 744 (Tex.
App.CDallas
1990, writ denied).  Whether a subsequent
agreement is intended to supersede the first or to constitute a novation is
usually a question of fact, and can only become a question of law if reasonable
minds cannot disagree.  Willeke, 189
S.W.2d at 479; CTTI Priesmeyer, 164 S.W.3d at 681;  Savitch, 2005 WL 1839092, at *3.         

The
evidence in the record in this case is the notes and guaranties.  When both sets of guaranties are considered
together under Northstar=s interpretation, the relevant
language of the 2007 guaranties is not inconsistent with that of the 2005
unlimited guaranties for the 2005 note, the 2007 guaranties were made for
separate consideration, and they were made under circumstances that they would
naturally be considered separate agreements intended by their provisions to
co-exist with the 2005 guaranties, which would be Acumulative.@  








By their
own terms, the 2007 guaranties require specific language to affect, modify, or
invalidate any other guaranty held by Northstar from Appellants.  But the 2007 guaranties contain no such
language specifically referencing the 2005 guaranties.  If the parties had intended to have the 2007
guaranties supersede, modify, or otherwise affect the 2005 guaranties, they
could have included specific language to that effect, but they did not do so.[6]  Northstar=s
arguments are thus persuasive that the summary judgment was proper as to
Appellants= liability on the 2005 note, and
that the 2007 guaranties did not limit Appellants= joint
and several liability for the entire balance owed on the 2005 note under their
2005 guaranty agreements.

On the
other hand, as Appellants point out, the 2007 guaranty agreements expressly
provide that each guarantor=s share
of liability is limited to 33.33 percent of the AIndebtedness,@ which is
in turn expressly defined as all of the principal amount arising from Aany and
all@ debts
and obligations Anow existing@ that JMW
owes to Northstar, which would include the balance owed on JMW=s 2005
loan guaranteed by Appellants.  Nothing
in the 2007 guaranty agreements limits AGuarantors= Share of
the Indebtedness@ to the amount owed under the
2007 loan. 








Additionally,
Appellants note that the paragraph in the 2007 guaranty agreements stating that
all guaranty agreements with Northstar are cumulative contains a qualifying
clause, A(except
as specifically stated below),@ and the
very next paragraph is the provision defining AGuarantors= Share of
the Indebtedness@ as 33.33 percent of the
principal amount arising from Aany and
all@ of JMW=s Adebts,
liabilities, and obligations owed to Northstar.@  These provisions support Appellant=s
interpretation that the 2007 agreements 
modify and limit each guarantor=s
liability under the 2005 guaranties to 33.33 percent of JMW=s debt
obligation to Northstar.  We conclude
that Appellants= interpretation of the 2007
agreementCthat their liability under both
agreements is limited to 33.33 percent of the amounts due under both JMW=s 2005
and 2007 loan[7]Cis as
reasonable as Northstar=s.   








Standing
alone, the 2005 and 2007 guaranty agreements are clear and unambiguous, but
when read together, they are subject to more than one reasonable
interpretation.  Applying Northstar=s
interpretation would give effect to the provisions in the 2007 guaranties that
all guaranties held by Northstar are Acumulative,@ but
would conflict with the language in those guaranties that Appellants=
liability is limited to a 33.33 percent share each of JMW=s
indebtedness Aarising from any and all debts,@ (not
just the 2007 note) it owed to Northstar. 
Conversely, giving effect to Appellants=
interpretation and thus limiting their liability under both the 2005 and 2007
guaranties to 33.33 percent each of JMW=s
indebtedness would give effect to the language in the 2007 guaranties limiting
their liability as to Aall debts,@ but
would conflict with the language in the 2005 guaranties stating that those
guaranties were Aabsolute, continuing, and
irrevocable,@ and Ashall not
be released, diminished, impaired, reduced or affected@ by any
reason or event including any agreement securing or otherwise relating to that
indebtedness.   

When the
guaranty agreements are considered together, we conclude that a latent
ambiguity is presented, not as to the meaning of a specific provision in either
set of agreements, but as to the interaction of the agreements.  See Progressive County Mut. Ins. Co. v.
Kelley, 284 S.W.3d 805, 807 (Tex. 2009) (per curiam) (holding that a
latent ambiguity arises when a contract that is unambiguous on its face is
applied to the subject matter with which it deals and an ambiguity appears by
reason of some collateral matter); Parks, 1 S.W.3d at 102.  Under these circumstances, we cannot accept
Appellants= argument that the rule of strict
construction applicable to guaranty agreements requires that we adopt Appellant=s
interpretation of the agreements as a matter of law.  We conclude that a fact issue exists as to
whether the parties intended for the 2007 guaranty agreements to supersede the
2005 agreements and thereby limit each Appellants=
liability under the 2005 agreements to several liability for 33.33 percent of
the 2005 note, requiring remand for trial. 
See Kelley, 284 S.W.3d at 809 (holding, where latent
ambiguity appeared from interaction of two documents rather than in construing
a provision or exclusion of single insurance policy, fact issue as to parties= intent
regarding whether one or two policies existed required remand for trial rather
than rendition in favor of insured under usual rule of strict construction
applicable to insurance policies).  We
sustain Appellants= sole issue.  








IV.
Conclusion

Having
sustained Appellants= sole issue, we affirm in part
and reverse in part.  We affirm the
judgment against JMW Partners, L.P., and the judgment of the trial court in
favor of Northstar as to McDonald=s and
Wilson=s
liability on their 2007 guaranty agreements. 
We reverse the trial court=s
judgment in favor of Northstar as to McDonald=s and
Wilson=s liability
as guarantors for the balance owed by JMW on the 2005 note, and remand that
portion of the cause to the trial court for further proceedings consistent with
this opinion.  

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

 

DELIVERED:  June 10, 2010

 

 

 











[1]See Tex. R. App. P. 47.4.





[2]The trial court entered
judgment against JMW on both notes.  JMW
is listed as a party to this appeal, but did not file a brief.  By letter, JMW requested to be joined as a
party to the brief previously filed by McDonald and Wilson.  Any party may join in all or any part of a
brief filed in an appellate court by another party in the same case.  Tex. R. App. P. 9.7.  Thus, we grant JMW=s request.  However, no issues are asserted by McDonald
and Wilson=s brief complaining of the
judgment against JMW.  Therefore, we will
affirm as to JMW.       





[3]The Clerk=s Record does not include
Plaintiff=s Original Motion for
Summary Judgment.





[4]Johnson neither answered
Plaintiff=s Supplemental Motion for
Summary Judgment nor appeared at the summary judgment hearing and is not a
party to this appeal.  See Tex. R.
App. P. 38.8(a)(1).  





[5]The party urging novation
as a defense bears the burden of proof.  Honeycutt
v. Billingsley, 992 S.W.2d 570, 577 (Tex. App.CHouston [1st Dist.] 1999,
pet. denied) (op. on reh=g) (holding Anovation@ is an affirmative
defense); Savitch, 2005 WL 1839092, at *3 (same).         





[6]Page two of the 2007
guaranties specifically references the 2005 Note under the definition of Acollateral@ by stating, @Assignment of franchise
agreement between JMW Partners and Dermacare for five (5) franchise locations
in the Denton County area, cross-pledged with Northstar Bank of Texas loan
#84078.@  Loan No. 84078 is the loan documented by the
2005 Note.  If the parties had intended
to have the 2007 Guaranty affect or modify the 2005 Guaranty, they could have
inserted specific language to that effect in the 2007 Guaranty.  





[7]Appellants also rely on
language in a small, shaded area at the top of the 2007 Guaranty that reads: AReferences in the shaded
area are for Lender=s use only and do not
limit the applicability of this document to any particular loan or item.@  We find that the Ashaded area@ language simply explains
the use of the shaded area and contains information for Northstar that does not
modify, supplement, or amend any terms of any guaranties or other
documents.  Cf. Mark Rotella Custom
Homes, Inc. v. Cutting, No. 2-07-133-CV, 2008 WL 623785, at *5 (Tex. App.CFort Worth March 6, 2008,
no pet.) (mem. op.) (holding that the opening paragraph of an addendum
indicates that it amends, supplements, and modifies a referenced contract).