

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-167-CV

JMW PARTNERS, L.P., DANIEL                                      APPELLANTS
MCDONALD, AND MARC WILSON

V.

NORTHSTAR BANK OF TEXAS                                          APPELLEE

------------

## FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In a single issue, Appellants Daniel McDonald and Marc Wilson, guarantors

of two loans by Appellee Northstar Bank of Texas ("Northstar") to JMW Partners,

L.P. ("JMW"),[2] assert that the trial court erred by granting summary judgment in favor

------

[1] ▲ *See* Tex. R. App. P. 47.4.

[2] ▲ The trial court entered judgment against JMW on both notes. JMW is listed as a party to this appeal, but did not file a brief. By letter, JMW requested to be joined as a party to the brief previously filed by McDonald and Wilson. Any party

of Northstar. The trial court decreed (1) McDonald and Wilson jointly and severally liable for 100 percent of JMW's 2005 loan from Northstar, and (2) McDonald and Wilson each severally liable for 33.33 percent of JMW's 2007 loan from Northstar.

Appellants contend that the 2007 guaranty agreements superseded the 2005 guaranty agreements and limited each Appellant's share of liability to 33.33 percent of both debts JMW owed Northstar. We affirm the summary judgment as to the 2007 loan, but reverse the summary judgment as to the 2005 loan and remand that claim for new trial.

## II. Factual Background

JMW signed a promissory note to Northstar dated June 28, 2005, in the amount of $162,500. The note provides that it would be secured by unlimited personal guaranties executed by McDonald, Wilson, and Greg Johnson. Each individual signed a guaranty agreement dated June 28, 2005, whereby each jointly and severally guaranteed all of the indebtedness JMW owed Northstar, including the indebtedness it owed under the note of the same date. The 2005 guaranty agreements define "Guaranteed Indebtedness" as

> [A]ll obligations, indebtedness, and liabilities of Borrower owed to Lender, now existing or hereafter created, acquired, or incurred, . . .

---

may join in all or any part of a brief filed in an appellate court by another party in the same case. Tex. R. App. P. 9.7. Thus, we grant JMW's request. However, no issues are asserted by McDonald and Wilson's brief complaining of the judgment against JMW. Therefore, we will affirm as to JMW.

**including, without limitation, the obligations, indebtedness and liabilities of Borrower under that certain Promissory Note dated of even date herewith in the principal amount of $162,500, signed by Borrower and payable to the order of Lender** and all interest accruing thereon and all attorney's fees and other expenses incurred in the enforcement or collection thereof.

The 2005 guaranty agreements further provide:

2. This instrument shall be an absolute, continuing, irrevocable and unconditional guaranty of payment and performance and . . . Guarantor shall remain liable on the obligations thereunder until the payment and performance in full of the Guaranteed Indebtedness.

5. Guarantor hereby agrees that his obligations under this Agreement shall not be released, diminished, impaired, reduced, or affected by the occurrence of any reason or event, including, without limitation, one or more of the following events, whether or not with notice to or the consent of Guarantor:

. . . .

d. Any renewal, extension, modification, waiver, amendment or rearrangement of any or all of the Guaranteed Indebtedness or any instrument, document, or agreement evidencing, securing or otherwise relating to any or all of the Guaranteed Indebtedness.

Eighteen months later, JMW executed a second note payable to Northstar dated January 1, 2007, for additional funds in the amount of $168,071.73. McDonald, Wilson, and Johnson each signed a second guaranty agreement also dated January 1, 2007. The 2007 guaranty agreements state,

[f]or good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of *Guarantor's Share of the Indebtedness* of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the related documents. [Emphasis added.]

3

The 2007 guaranty agreements define "Note" as all of "Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes . . . ." The term "related documents" is defined as "all promissory notes, credit agreements, loan agreements, . . . guaranties, . . . and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness." However, the 2007 guaranty agreements limit each guarantor's liability to 33.33 percent of JMW's "Indebtedness" to Northstar, as follows:

> GUARANTOR'S SHARE OF THE INDEBTEDNESS: The words 'Guarantor's Share of the Indebtedness' as used in this Guaranty mean 33.330% of the principal amount of the Indebtedness that is outstanding from time to time and at any one or more times. 'Guarantor's Share of the Indebtedness' also includes all accrued unpaid interest on the Indebtedness and all collection costs, expenses, and Lender's reasonable attorneys' fees . . . .

As in the previous agreements, the 2007 guaranty agreements define "Indebtedness" as "all of the principal amount outstanding from time to time and at any one or more times," together with accrued interest, collection costs and legal expenses, and Lender's reasonable attorneys' fees, "arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender." The term "Indebtedness" specifically includes . . . "loans, advances, debts, . . . and liabilities of Borrower, and . . . future advances, loans or

4

transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations . . . ."

The 2007 guaranty agreements do not specifically reference the 2007 Note which had been executed on the same date, with the exception that "Loan No. 44518" (the loan number for the 2007 note) is typed or printed in the upper left hand corner of pages two and three of each 2007 guaranty agreement. Nor do the 2007 guaranty agreements specifically reference the 2005 note or its guaranty agreements. Instead, the 2007 guaranty agreements provide:

> If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, *Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties*. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties. [Emphasis added.]

### III. Procedural Background

After JMW defaulted on payments under both notes, Northstar filed its original petition seeking recovery of the balance owed on both notes from JMW and alleging joint and several liability for the entire balance owed under both notes by McDonald, Wilson, and Johnson as guarantors of both notes. Northstar filed an Amended Motion for Summary Judgment and later filed a Supplemental Motion for Summary Judgment[3] seeking judgment against the maker and guarantors jointly and severally

---

[3] The Clerk's Record does not include Plaintiff's Original Motion for Summary Judgment.

5

for the amount of the balance owed on the 2005 note but seeking only several liability against each guarantor for 33.33 percent of the balance owed on the 2007 note.

By counter-claims, cross-motions for summary judgment, and a combined response to Northstar's amended and supplemental motion for summary judgment, Appellants and JMW alleged that the 2007 guaranty agreements "superseded" the 2005 guaranty agreements, thereby limiting Appellants' obligations under both the 2005 and 2007 agreements to several liability of 33.33 percent of the amounts owed under both notes. Following a hearing, the trial court entered summary judgment against the guarantors for (1) joint and several liability on the balance owed under the 2005 Note, and (2) several liability of 33.33 percent per guarantor on the debt remaining under the 2007 Note.[4]

## IV. Discussion

Appellants contend that the trial court erred in granting summary judgment to Northstar on the 2005 guaranty agreements for joint and several liability of Appellants as to the entire amount owed on the 2005 note. They argue that the only reasonable interpretation of the 2007 guaranty agreements is that they supersede the 2005 guaranty agreements, and that the 33.33 percent limitation on Appellants'

---

[4] Johnson neither answered Plaintiff's Supplemental Motion for Summary Judgment nor appeared at the summary judgment hearing and is not a party to this appeal. *See* Tex. R. App. P. 38.8(a)(1).

6

liability in the 2007 guaranty agreements applies to their obligations as guarantors as to the 2005 Note as well as the 2007 Note.

Alternatively, Appellants assert that the guaranty agreements are ambiguous, and that under the rule of *strictissimi juris* applicable to guaranty agreements, the trial court must apply the more favorable interpretation to them and limit each guarantor's indebtedness to 33.33 percent of JMW's indebtedness under both notes. Northstar responds that there is only one reasonable interpretation of the guaranty agreements, that the terms of the 2007 guaranty agreements limiting each guarantor's obligation to 33.33 percent of liability apply only to the 2007 note, and that the 2005 guaranty agreements remain enforceable for Appellants' joint and several liability for the entire amount owed under the 2005 note.

### A. Standard of Review

In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Id.* The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Once the movant establishes that he is entitled to judgment

7

as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Id.* A nonmovant who wishes to assert an affirmative defense must urge it in the response and provide enough evidence to create a fact issue on each element of the defense. *Rabe v. Dillard's, Inc.*, 214 S.W.3d 767, 768 (Tex. App.—Dallas 2007, no pet.).

## B. Rules of Guaranty Construction and Interpretation

We construe a guaranty as any other contract. *Mid-South Telecomm. Co. v. Best*, 184 S.W.3d 386, 390 (Tex. App.—Austin 2006, no pet.). Our primary concern is to ascertain the intent of all parties as expressed in the contract. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). The construction of an unambiguous contract is a question of law for the court to determine de novo. *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). We examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We interpret the contract by ascertaining the true objective intentions of the parties, based on the contract language, and presuming that the parties intended every clause to have some effect. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005); *Heritage Res., Inc.*, 939 S.W.2d at 121. We give words their plain, common, or generally accepted meaning unless the

8

instrument shows that the parties used them in a technical or different sense. *Heritage Res., Inc.*, 939 S.W.2d at 121.

Appellants contend that guaranty agreements differ from other contracts in that the rule of *strictissimi juris* applies, which requires that a guaranty agreement be strictly construed in favor of the guarantor, citing *Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex. 1978). However, this rule only applies when ordinary rules of contract construction render the parties' obligations uncertain or ambiguous. *Coker*, 650 S.W.2d at 393 n.1; *Pham v. Mongiello*, 58 S.W.3d 284, 288 (Tex. App.—Austin 2001, pet. denied). A contract is ambiguous when its meaning is uncertain and doubtful or when it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393; *Pham*, 58 S.W.3d at 288. That the parties to a contract disagree over the interpretation of the contract does not necessarily render it ambiguous. *Pham*, 58 S.W.3d at 288. Likewise, uncertainty or a lack of clarity in the language used in the contract does not automatically render it ambiguous. *Id.* And an ambiguity does not arise simply because the parties advance conflicting interpretations; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000); *Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 460 (Tex. App.—Dallas 2007, no pet.). An ambiguity exists only after application of established rules of interpretation leaves an agreement susceptible to more than one

reasonable interpretation. *DeWitt County Elec. Coop. Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex. 1999).

**C. Whether the 2007 Guaranties Limit Appellants' Liability Under the 2005 Guaranty Agreements**

The 2005 guaranty agreements were executed at the same time as the 2005 note, and the parties do not disagree that the 2007 guaranty agreements were executed contemporaneously with the 2007 note. While the 2007 guaranty agreements do not specifically reference the 2007 note, the 2005 note, or the prior guaranty agreements, we may consider together all writings relating to the same transaction, even if they were executed at different times. *Id.* at 102. "Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *Id., see also Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 65 (1959) (holding writings relating to same transaction may be considered together unless surrounding circumstances indicate different intent); *IP Petroleum Co. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 898 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (op. on reh'g) (considering earlier joint operating agreement and later participation agreement pertaining to same operation together to determine whether one superseded the other). Under Appellants' theory, the 2007 guaranties relate at least in part to the earlier transaction by altering their obligations under the earlier guaranties; thus, we will

10

consider all four documents together in determining the intent of the parties. *See Parks,* 1 S.W.3d at 102.

The terms of the 2005 guaranty agreements show the continuing nature of those agreements. A continuing guaranty contemplates a series of future transactions such that the guaranty remains in effect for an indefinite time or until revoked. *Houston Furniture Distribs., Inc. v. Bank of Woodlake*, N.A., 562 S.W.2d 880, 884 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ). Under the 2005 guaranty agreements, each Appellant also agreed that his obligations would be "irrevocable." They further agreed that their obligations under the 2005 guaranty agreements would not be "released, diminished, impaired, reduced, or affected by . . . modification . . . of any or all of the Guaranteed Indebtedness or any instrument, document, or agreement evidencing, securing or otherwise relating to any or all of the Guaranteed Indebtedness." This language indicates that the 2007 guaranty agreements were not intended to supersede the 2005 agreements.

Additionally, the 2007 guaranties contained no specific language that superseded, modified, or affected the previous guaranties. To the contrary, the 2007 guaranties specifically stated that they did *not* "affect or invalidate" any other guaranties "presently [held] by Lender" but would be "cumulative" of any other such guaranty agreements, and the guarantors' liability would be their "aggregate" liability under the 2007 guaranties and any such other unterminated guaranties.

11

These provisions further reinforce a conclusion that the later guaranty agreements were not intended to supersede the earlier guaranties in whole or in part.

Considering the two sets of agreements together, the language of both sets of guaranty agreements can reasonably be read to mean that Northstar's rights under the 2005 and 2007 guaranty agreements continue to exist simultaneously, and that the reduction in each guarantor's share of liability under the 2007 agreements did not affect, modify, or supersede their joint and several liability under the 2005 agreement for the entire balance owed under the 2005 note. However, Appellants contend that, considering other language of the guaranty agreements, they may be reasonably interpreted such that the terms of the later guaranties superceded the earlier guaranties. We agree.

When two contracts between the same parties are so inconsistent that they cannot subsist together, it will be conclusively presumed that the later contract supersedes the earlier contract. *Willeke v. Bailey*, 144 Tex. 157, 189 S.W.2d 477, 479 (1945) (holding where contracts are so inconsistent that both cannot subsist together, "the [contract] made first is conclusively presumed to have been superseded by the other"); *IP Petroleum Co.,* 116 S.W.3d at 899 (holding joint operating agreement superseded participation letter agreement where they were so mutually inconsistent that both could not stand); *Savitch v. Sw. Bell Yellow Pages, Inc.*, No. 2-04-257-CV, 2005 WL 1839092, at *3 (Tex. App.—Fort Worth Aug. 4, 2005, no pet.) (holding that, although new agreement may establish

12

novation as matter of law if reasonable minds cannot differ as to its effect, evidence supported trial court finding that no novation occurred as result of new contract).

In absence of such inconsistent provisions as will constitute an implied novation, a second contract will supersede or operate as a novation of the first only when the parties to both contracts intend and agree that the obligations of the second contract will be substituted for and operate as a discharge of the obligations of the earlier agreement. *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 424 (1953) (holding evidence of conduct and acts of parties established intent that contract with new party constituted novation and release of former debtor as matter of law); *CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 681 (Tex. App.—Austin 2005, no pet.) (holding evidence supported jury's finding that later agreement was not intended to replace earlier contract absent express language of novation or inconsistent provisions).[5]

A subsequent agreement does not supersede a prior agreement if it is not inconsistent with the prior agreement, is made for separate consideration, or is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written agreement. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 33 (1958); *Fish v. Tandy Corp*., 948 S.W.2d

---

[5] The party urging novation as a defense bears the burden of proof. Honeycutt v. Billingsley, 992 S.W.2d 570, 577 (Tex. App.–Houston [1st Dist.] 1999, pet. denied) (op. on reh'g) (holding "novation" is an affirmative defense); Savitch, 2005 WL 1839092, at *3 (same).

886, 898 (Tex. App.—Fort Worth 1997, writ denied); *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 744 (Tex. App.—Dallas 1990, writ denied). Whether a subsequent agreement is intended to supersede the first or to constitute a novation is usually a question of fact, and can only become a question of law if reasonable minds cannot disagree. *Willeke,* 189 S.W.2d at 479; *CTTI Priesmeyer*, 164 S.W.3d at 681; *Savitch,* 2005 WL 1839092, at *3.

The evidence in the record in this case is the notes and guaranties. When both sets of guaranties are considered together under Northstar's interpretation, the relevant language of the 2007 guaranties is not inconsistent with that of the 2005 unlimited guaranties for the 2005 note, the 2007 guaranties were made for separate consideration, and they were made under circumstances that they would naturally be considered separate agreements intended by their provisions to co-exist with the 2005 guaranties, which would be "cumulative."

By their own terms, the 2007 guaranties require specific language to affect, modify, or invalidate any other guaranty held by Northstar from Appellants. But the 2007 guaranties contain no such language specifically referencing the 2005 guaranties. If the parties had intended to have the 2007 guaranties supersede, modify, or otherwise affect the 2005 guaranties, they could have included specific language to that effect, but they did not do so.[6] Northstar's arguments are thus

---

[6] Page two of the 2007 guaranties specifically references the 2005 Note under the definition of "collateral" by stating, "Assignment of franchise agreement between JMW Partners and Dermacare for five (5) franchise locations in the Denton

14

persuasive that the summary judgment was proper as to Appellants' liability on the 2005 note, and that the 2007 guaranties did not limit Appellants' joint and several liability for the entire balance owed on the 2005 note under their 2005 guaranty agreements.

On the other hand, as Appellants point out, the 2007 guaranty agreements expressly provide that each guarantor's share of liability is limited to 33.33 percent of the "Indebtedness," which is in turn expressly defined as all of the principal amount arising from "any and all" debts and obligations "now existing" that JMW owes to Northstar, which would include the balance owed on JMW's 2005 loan guaranteed by Appellants. Nothing in the 2007 guaranty agreements limits "Guarantors' Share of the Indebtedness" to the amount owed under the 2007 loan.

Additionally, Appellants note that the paragraph in the 2007 guaranty agreements stating that all guaranty agreements with Northstar are cumulative contains a qualifying clause, "(except as specifically stated below)," and the very next paragraph is the provision defining "Guarantors' Share of the Indebtedness" as 33.33 percent of the principal amount arising from "any and all" of JMW's "debts, liabilities, and obligations owed to Northstar." These provisions support Appellant's interpretation that the 2007 agreements modify and limit each guarantor's liability

County area, cross-pledged with Northstar Bank of Texas loan #84078." Loan No. 84078 is the loan documented by the 2005 Note. If the parties had intended to have the 2007 Guaranty affect or modify the 2005 Guaranty, they could have inserted specific language to that effect in the 2007 Guaranty.

15

under the 2005 guaranties to 33.33 percent of JMW's debt obligation to Northstar. We conclude that Appellants' interpretation of the 2007 agreement—that their liability under both agreements is limited to 33.33 percent of the amounts due under both JMW's 2005 and 2007 loan[7]—is as reasonable as Northstar's.

Standing alone, the 2005 and 2007 guaranty agreements are clear and unambiguous, but when read together, they are subject to more than one reasonable interpretation. Applying Northstar's interpretation would give effect to the provisions in the 2007 guaranties that all guaranties held by Northstar are "cumulative," but would conflict with the language in those guaranties that Appellants' liability is limited to a 33.33 percent share each of JMW's indebtedness "arising from any and all debts," (not just the 2007 note) it owed to Northstar. Conversely, giving effect to Appellants' interpretation and thus limiting their liability under both the 2005 and 2007 guaranties to 33.33 percent each of JMW's indebtedness would give effect to the language in the 2007 guaranties limiting their liability as to "all debts," but would conflict with the language in the 2005 guaranties stating that those guaranties were "absolute, continuing, and irrevocable," and "shall

---

[7] Appellants also rely on language in a small, shaded area at the top of the 2007 Guaranty that reads: "References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item." We find that the "shaded area" language simply explains the use of the shaded area and contains information for Northstar that does not modify, supplement, or amend any terms of any guaranties or other documents. *Cf. Mark Rotella Custom Homes, Inc. v. Cutting*, No. 2-07-133-CV, 2008 WL 623785, at *5 (Tex. App.—Fort Worth March 6, 2008, no pet.) (mem. op.) (holding that the opening paragraph of an addendum indicates that it amends, supplements, and modifies a referenced contract).

16

not be released, diminished, impaired, reduced or affected" by any reason or event including any agreement securing or otherwise relating to that indebtedness.

When the guaranty agreements are considered together, we conclude that a latent ambiguity is presented, not as to the meaning of a specific provision in either set of agreements, but as to the interaction of the agreements. *See Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009) (per curiam) (holding that a latent ambiguity arises when a contract that is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter); *Parks*, 1 S.W.3d at 102. Under these circumstances, we cannot accept Appellants' argument that the rule of strict construction applicable to guaranty agreements requires that we adopt Appellant's interpretation of the agreements as a matter of law. We conclude that a fact issue exists as to whether the parties intended for the 2007 guaranty agreements to supersede the 2005 agreements and thereby limit each Appellants' liability under the 2005 agreements to several liability for 33.33 percent of the 2005 note, requiring remand for trial. *See Kelley*, 284 S.W.3d at 809 (holding, where latent ambiguity appeared from interaction of two documents rather than in construing a provision or exclusion of single insurance policy, fact issue as to parties' intent regarding whether one or two policies existed required remand for trial rather than rendition in favor of insured under usual rule of strict construction applicable to insurance policies). We sustain Appellants' sole issue.

17

## IV. Conclusion

Having sustained Appellants' sole issue, we affirm in part and reverse in part. We affirm the judgment against JMW Partners, L.P., and the judgment of the trial court in favor of Northstar as to McDonald's and Wilson's liability on their 2007 guaranty agreements. We reverse the trial court's judgment in favor of Northstar as to McDonald's and Wilson's liability as guarantors for the balance owed by JMW on the 2005 note, and remand that portion of the cause to the trial court for further proceedings consistent with this opinion.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  June 10, 2010