# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-00-00712-CV

---

**Julian Pham a/k/a Nhon Quang Pham, Appellant**

**v.**

**Luis Mongiello, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. 249,510, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

---

Appellant Julian Pham appeals from the trial court's order granting appellee Luis Mongiello's motion for summary judgment and awarding Mongiello $12,341.83 in damages and $1,000 in attorney's fees. We will affirm in part and reverse and remand in part.

On September 27, 1997, to help his friend Deborah Leffingwell lease an apartment, Pham signed an agreement stating he would guarantee payment to her landlord of all obligations or indebtedness incurred under the lease by Leffingwell. Mongiello eventually evicted Leffingwell for non-payment of rent and for having two dogs in the apartment. When Leffingwell did not pay the past-due rent, late charges, and charges for unauthorized pets and repairs, Mongiello sued her. In November 1999, he obtained a default judgment against Leffingwell awarding him $13,451.83:

$9,616.09 in damages, $629.05 in interest, and $3,205.69 in attorney's fees. Mongiello then demanded that Pham, the guarantor, pay the judgment. When Pham refused, Mongiello filed this suit.

Pham and Mongiello both filed motions for summary judgment. The trial court granted Mongiello's motion, awarding him $12,341.83 in damages ($13,451.83 minus a $1,110 credit for a lease deposit) and an additional $1,000 in attorney's fees.

Pham argues that the evidence is legally and factually insufficient to support the damages awarded. Specifically, he argues (1) the trial court erred in construing the guaranty to include tort damages and (2) the court should have granted his motion for summary judgment.

Summary judgment is properly granted only when the movant establishes there are no genuine issues of material fact to be decided and he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Memorial Med. Ctr. v. Howard*, 975 S.W.2d 691, 692 (Tex. App.—Austin 1998, pet. denied). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the defendant establishes his right to summary judgment, the plaintiff must then present evidence raising a fact issue. *See id.*

In reviewing the grant of summary judgment, we view the evidence in the light most favorable to the non-movant and make every reasonable inference and resolve all doubts in favor of the non-movant. *See id.*; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *Howard*, 975 S.W.2d at 693. When both parties move for summary judgment, we will determine all

questions presented and render the judgment the trial court should have rendered. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

To support his motion for summary judgment, Mongiello produced: (1) Pham's discovery responses in which he admitted his liability "only as to rents, late fees and reasonable attorney fees," and admitted he had not paid Mongiello's demand, which Pham characterized as "unreasonable"; (2) Mongiello's original petition filed in his suit against Leffingwell, in which he alleged Leffingwell had "caused extensive property damage" to the apartment and owed rent, late fees, and other charges under the lease; (3) an exhibit to that petition showing Leffingwell owed $587.50 in rent, $595 in late fees, $226 in attorney's fees, and $8,208.59 for unauthorized pet charges and damage and repairs to the apartment; (4) the default judgment stating that Leffingwell had by her default "admitted the allegations of [Mongiello's] petition" and owed him $13,451.83; (5) Mongiello's affidavit stating Pham had guaranteed the lease, Mongiello obtained a judgment against Leffingwell for $13,451.83, Mongiello demanded payment of the judgment from Pham, and Pham refused to pay; and (6) the lease guaranty.

The record provides almost no evidence regarding Mongiello's damages. The only evidence as to specific damage done to the apartment by Leffingwell is a list attached as an exhibit to Mongiello's petition against Leffingwell. The list itemizes the following damages:

| Date | Description | Amount |
|------|-------------|--------|
| April 4, 1997 | Late fees | $ 25.00 |
| April 30, 1997 | Late fees | $ 260.00 |
| May 30, 1997 | Rent | $ 50.00 |
| May 31, 1997 | Late fees | $ 310.00 |
| June 15, 1997 | ½ Month rent | $ 387.50 |

3

| | | |
|---|---|---|
| June 15, 1997 | Rent | $ 150.00 |
| June 15, 1997 | Pets | $5,760.00 |
| July 1997 | Rug | $1,874.49 |
| | Venetian Blinds | $ 134.23 |
| | Disposal sink | $ 45.92 |
| | Plumber | $ 109.65 |
| | Locks | $ 70.85 |
| | Locks | $ 49.79 |
| | Lawyer | $ 60.00 |
| | Lawyer (Eviction citation) | $ 166.00 |
| August 1997 | Tile | $ 63.66 |
| | Tile Installation | $ 100.00 |
| **Total** | | **$9,617.09** |

The only other evidence as to Leffingwell's conduct concerning the apartment is the eviction notice stating she was being evicted for breaching the lease by "non-payment of all rent due . . . and allowing two dogs without written pet agreement." Based on this evidence, Mongiello was awarded a default judgment against Leffingwell for $9,616.09, plus interest of $629.05 and attorney's fees of $3,205.69, one-third of the damages awarded.

In his response and motion for summary judgment, Pham argued that the guaranty should be strictly construed against Mongiello and should not be read to imply obligations "not specifically set forth or contemplated by the parties." Pham attached as evidence the notice of eviction, an affidavit stating Mongiello had not credited against the damages he sought an $1,110 deposit paid by Pham, and Pham's affidavit, in which he stated he was not provided with a copy of the lease when he signed the guaranty and did not undertake any negotiations or discussions of the intent or scope of the guaranty. Pham stated

> I read it [the guaranty] to understand that I was only guaranteeing the rents, and any reasonable late charges and reasonable attorneys [sic] fees. I did not read it to imply

4

any other charges. No one, especially me, ever contemplated or intended that I would guarantee that Ms. Leffingwell would not be negligent or that I would guarantee or indemnify them against any wrongful or intentional tortuous [sic] conduct by her. I did not receive any consideration from Plaintiff for that type of guarantee or for being Ms. Leffingwell's insurer. If there was any pet damage, no one informed me that I was guaranteeing against pet damage or taking on that additional liability.

Pham stated that he was prepared to pay the rent, late fees, and reasonable attorney's fees and in fact had tendered that amount to the trial court's clerk.

The lease guaranty states Pham will:

> guarantee Tenant's [Leffingwell] performance of obligations under the above referenced lease (the Lease). If Tenant fails to timely make any payment (rent, late fees, charges, attorney fees, or others) under the Lease, Guarantors [Pham] will promptly make such payment to Landlord [Mongiello] at the place of payment specified in the Lease. Guarantor's guarantee Tenant's obligations under the Lease without regard to any modification, amendment, renewal, or extension. Guarantors waive any rights to notices of acceptance, modification, amendment, renewal, extension, or breach of the Lease. Tenant and Guarantors are jointly and severally liable for all provisions of the Lease. All remedies in the event of breach (including the reporting of default to consumer reporting agencies, acceleration of rents, and other remedies) are enforceable against Tenant and Guarantor.

The guaranty stated Mongiello would provide Pham with a copy of the lease upon request. The guaranty closed with language advising Pham to read the document carefully as it was legally binding, and to seek an attorney's advice if he did not understand the effect of the guaranty.

If a guaranty is ambiguous and susceptible to two reasonable interpretations, courts should use the interpretation that favors the guarantor. *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1997, no writ); *Preston Ridge Fin. Servs. Corp. v. Tyler*, 796 S.W.2d 772, 780 (Tex. App.—Dallas 1990, writ denied). A guarantor's obligations will not be extended by

5

implication beyond the precise written terms of the guaranty contract. *Cox*, 949 S.W.2d at 530; *Tyler*, 796 S.W.2d at 780. However, the fact that the parties to a contract disagree over the interpretation of the contract does not necessarily render it ambiguous. *Tyler*, 796 S.W.2d at 777. Likewise, uncertainty or a lack of clarity in the language used in the contract does not automatically render it ambiguous. *Id.* When a contract is unambiguous, its construction is a question of law to be decided by the trial court and the court should not consider parol evidence of the contract's meaning, such as a party's testimony of his intent. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Tyler*, 796 S.W.2d at 777; *Park Creek Assocs., Ltd. v. Walker*, 754 S.W.2d 426, 428-29 (Tex. App.—Dallas 1988, writ denied).

A guarantor's liability on a debt is measured by the principal's liability unless the guaranty expressly sets out a more limited or more extensive liability. *Moore v. White Motor Credit Corp.*, 708 S.W.2d 465, 472 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). A dispute as to the rights and obligations of the guarantor is resolved by a factual determination of the rights and obligations of the parties to the underlying contract, in this case the lease between Mongiello and Leffingwell. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 114 (Tex. 1978).

Pham was not provided with a copy of the lease when he signed the guaranty. Although Pham could have requested a copy of the lease, at the time he signed the guaranty, he was not informed by Mongiello or Mongiello's agents of the various responsibilities Leffingwell had agreed to under the lease.

Mongiello has not cited nor have we found case law construing and applying guaranty agreements in the context of a residential lease. This is not a guaranty between two entities

6

sophisticated in business. This is an individual doing a favor for a friend and guaranteeing rent payments to her landlord. The language of the guaranty leads to the conclusion that it was intended to guarantee that Mongiello would receive all rent due, not other damages. The guaranty states Pham would be liable for "any payment" and for Leffingwell's "performance of obligations " under the lease. However, the guaranty then immediately references rent and late fees, with only a blanket, cursory reference to other possible charges—"(rent, late fees, charges, attorney fees, *or others*)." (Emphasis added.) This language indicates the guaranty was intended to ensure rent payments and late fees tied to rent. It does not indicate that Pham guaranteed unlisted charges such as repairs or unauthorized pet charges.

We believe this case is analogous to cases involving indemnity agreements. If a party seeks through contract to obtain indemnification against its own negligence, that indemnity must be expressly stated in the agreement. *Houston Lighting & Power Co. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 890 S.W.2d 455, 458 (Tex. 1994); *Dorchester Gas Corp. v. American Petrofina, Inc.*, 710 S.W.2d 541, 543 (Tex. 1986). Those express terms must also be conspicuous in the contract. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Such express language is also required in cases where a party seeks indemnification for strict liability because it (1) "prevents the injustice that may occur when an innocent party incurs tremendous costs because of another's strict statutory liability," and (2) "prevents drafters from 'devis[ing] novel ways of writing provisions which fail to expressly state the true intent of those provisions' and concealing that intent through the use of ambiguous language." *Houston Lighting & Power Co.*, 890 S.W.2d at 458 (quoting *Ethyl Corp v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex. 1987)). In *Ethyl Corp.*, the

7

party seeking indemnity relied on language in the indemnity agreement referring to "any loss." *Ethyl Corp.,* 752 S.W.2d at 708. The court disagreed and held that the agreement did not expressly provide indemnity for loss due to negligence. *Id.*

These justifications apply with equal force here. A guaranty seeking to make a third party liable for a lessee's obligations under a lease must expressly and clearly set out what possible charges could be incurred under the lease. This guaranty did not set out in express and conspicuous terms that Pham might be liable for pet charges or repairs to the apartment.[1] By his guaranty, Pham ensured only that Leffingwell was creditworthy for rent and late fees. He did not guarantee that she would at all times behave properly during the term of the lease. By this simple instrument, Pham did not become an insurer of Leffingwell's conduct. An individual guarantor should not be expected to anticipate that a friend might be negligent. A friend's negligent or even tortious conduct generally is not foreseeable, and damages due to such conduct are not foreseeable under this guaranty.[2] We hold Pham guaranteed rent, late fees, and reasonable attorney's fees related to those rents and fees. Pham is therefore liable under the evidence in the record for $595.00 in late fees, $587.50 in rent,

---

[1] Indeed the lease agreement provided that pets were not permitted without prior permission.

[2] Further, although Pham has not raised this argument on appeal, we note that Texas case law disapproves of holding a guarantor liable based on a default judgment entered against the principal when the guarantor had no notice or opportunity to defend against the default judgment. *See Howze v. Surety Corp. of Am.*, 584 S.W.2d 263, 265 (Tex. 1979); *Brazos Valley Cmty. Action Agency v. Robison*, 900 S.W.2d 843, 845 (Tex. App.—Corpus Christi 1995, writ denied); *Mayfield v. Hicks*, 575 S.W.2d 571, 574 (Tex. App.—Dallas 1978, writ ref'd n.r.e.) (guarantor not liable on default judgment in which he participated); *see also Trinity Universal Ins. Co. v. Briarcrest Country Club Corp.*, 831 S.W.2d 453, 455 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (applying same rule to case involving surety on performance bond).

along with reasonable attorney's fees. We remand this cause to the trial court for a hearing to determine what attorney's fees are reasonable in light of our ruling today.

 

 

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed:   October 11, 2001

Publish