

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-278-CV

CENTERPOINT APARTMENTS                                              APPELLANT

V.

JEFFREY L. WEBB                                                      APPELLEE

-----------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. Introduction

To paraphrase the Bard, "To be [a lease renewal], or not to be [a lease renewal]. That is the question."[2] In one issue, Appellant Centerpoint Apartments (Centerpoint) appeals the trial court's take nothing judgment in

---

[1] *See* TEX. R. APP. P. 47.4.

[2] WILLIAM SHAKESPEARE, HAMLET act 3, sc. 1.

favor of Appellee Jeffrey L. Webb.  At risk are damages of $1,186.67, plus attorney's fees of several times that amount.  We affirm.

## II. Factual and Procedural History

On April 29, 2004, Dale Arms executed a Texas Apartment Association (TAA) Member form agreement with Centerpoint entitled "Apartment Lease Contract" (Lease 1).  Lease 1's term began on May 1, 2004, ended November 30, 2004, required thirty days' written notice of termination or intent to move out to prevent automatic month-to-month renewal, and provided for $545 monthly rent and prorated rent of $425 for the first month, among other provisions.  On May 1, 2004, Dale Arms's older brother, Webb, entered a lease guaranty contract (Guaranty Contract) with Centerpoint, the terms of which are at issue here.

On September 29, 2004, Centerpoint entered into a second TAA form agreement with Arms, also entitled "Apartment Lease Contract" (Lease 2), which was set to begin on December 1, 2004, the day after the expiration of Lease 1, and to end on June 30, 2005.  Paragraph 3 of Lease 2 provided that it would automatically renew month-to-month unless either party gave at least sixty days' written notice.  It also provided that there was no prorated rent

amount, but it included an "Addendum for Rental Concessions," (Addendum) dated September 29, 2004.[3]

Arms fulfilled his contractual obligations under Lease 1; however, he breached Lease 2. Centerpoint filed suit in the justice court against Webb for breach of the Guaranty Contract and prevailed. Webb appealed to the county court.

During the bench trial, the county court heard testimony and argument and reviewed evidence regarding whether Lease 2 was a new lease contract or a renewal of Lease 1. The trial court admitted Centerpoint's exhibits, including the Guaranty Contract, Lease 2, and the Addendum. It also admitted Webb's exhibits, including the TAA form Lease Contract Guaranty and Lease 1.

Kendra Heintzelman, Centerpoint's assistant property supervisor, testified that the Guaranty Contract "will guarantee renewals, original contract renewals,

---

[3] The Addendum provided as follows:

> Addendum to lease contract dated 9-24-04 between Dale Arms and Centerpoint Apartments[.] Rent from 12/1/04 to 6-30-05 will be $399.00 per month until 6-30-05. The total concession that you will be receiving is $1,022.00. . . . When this lease term ends, rent will automatically go to the current street rate. At that time, please contact the office to find out what the street rate is or if we are offering any discounts at that time.

The underlined portions here and throughout this opinion represent the lines that were completed by hand.

3

roommate additions, deletions, modifications, apartment number changes." She also testified that Centerpoint had modified TAA's Lease Contract Guaranty form, which was admitted into evidence to compare to the Guaranty Contract, particularly the "[v]erbiage regarding renewals, amendments, modifications, unit number changes." She testified that Centerpoint did not use a TAA renewal lease form, that the guarantor's obligation terminates when the apartment is vacated, and that the guarantor's rights were in the lease contract. She testified that she believed that Lease 2 was a renewal. Webb testified that he understood the Guaranty Contract to be only for a six month period.

At the trial's conclusion, the trial court held that Webb was not subject to liability under the Guaranty Contract, stating,

> The document that the apartment commission has chosen to use is a document entitled Apartment Lease Contract. It does not, in any way, indicate that it is a renewal. That the apartment complex chooses to use that as its vehicle for continuation of occupancy by tenants in this action does not change it into a renewal contract. It is not labeled as such. . . . And the Court is going to strictly construe the language of the documents that these parties have signed. Therefore, I do not find that the Lease Contract Guaranty, . . . extends to the subsequent document, . . . says date of Lease Contract, 9/24/04, with the starting date being December 1, 2004. So the judgment is for the Defendant in this action.

This appeal followed.

4

### III. Analysis

In its sole issue, Centerpoint argues that the trial court erred by rendering judgment in favor of Webb, claiming that it established as a matter of law that Webb breached the Guaranty Contract. Specifically, Centerpoint claims that the Guaranty Contract's express terms extended Webb's liability to include a breach of a lease renewal or any leases signed by Webb's brother, that the lease contract title was not dispositive of an intent to renew or to discontinue Webb's guarantor liability, and that Centerpoint established at trial all of the elements of a breach of guaranty claim.

### A. Standard of Review

We review de novo a trial court's conclusions of law with regard to contract interpretation. *See MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51(Tex. 1999); *Huntley v. Enon Ltd. P'ship*, 197 S.W.3d 844, 849 (Tex. App.—Fort Worth 2006, no pet.). We accord no deference to the lower court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

### B. Contract Interpretation

When interpreting a contract, no single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Citizens Nat'l Bank in Abilene v. Tex. & Pac. Ry. Co.*,

5

136 Tex. 333, 150 S.W.2d 1003, 1006, *cert. denied*, 314 U.S. 656 (1941). If an instrument is written so that it can be given a definite legal meaning or interpretation, the court should construe it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Pham v. Mongiello,* 58 S.W.3d 284, 288 (Tex. App.—Austin 2001, pet. denied). To achieve this objective, the court should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951).

The fact that the parties to a contract disagree over the interpretation of the contract does not necessarily render it ambiguous. *Pham*, 58 S.W.3d at 288. Likewise, uncertainty or a lack of clarity in the language used in the contract does not automatically render it ambiguous. *Id*. And an ambiguity does not arise simply because the parties advance conflicting interpretations; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000); *Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 460 (Tex. App.—Dallas 2007, no pet.).

**1. Guaranty Contract Terms**

The Guaranty Contract provides in pertinent part as follows:

Lease Contract Information . . .
ABOUT LEASE: Date of Lease Contract . . . 4/29/04 . . .
Monthly rent for dwelling unit $545 . . .
Beginning date of Lease Contract: 5/1/04 . . .
Ending date of Lease Contract: 11/30/04[.]

. . .

You, as guarantor signing this Lease Contract Guaranty, guarantee all obligations of resident(s) under the above Lease Contract, including but not limited to rent, late fees, property damage, repair costs, animal violation charges, reletting charges, utility payments and all other sums which may become due under the Lease Contract. You agree that your obligations as guarantor will continue and will not be affected by amendments, modifications, roommate changes or deletions, unit # changes, renewals or any lease agreements which may be agreed to from time to time between any of the residents and us (including month to month renewal in P.#3 of lease.) Guarantor is responsible for any holdovers, (paragraph #32 of lease.) If guarantor gives notice to move out, (P.#3 and #37 of lease) and resident renews lease or signs a new lease, guarantor's notice will be considered void.

. . .

Guarantor unconditionally understands that the guarantor form allows the resident the right to renew his or her lease at any time he or she desires without approval from guarantor or notification by apartment management to guarantor of such renewal. Guarantor is responsible for any renewals signed by resident.

**2. Lease Title and Terms**

Centerpoint argues that, contrary to the trial court's interpretation, Lease 2's title, "Apartment Lease Contract," was not dispositive of the parties' intent to renew Lease 1 or to continue Webb's liability. However, while title alone

7

may not be dispositive, we may consider it in interpreting the parties' intentions. *Cf. Sefzik*, 231 S.W.3d at 462 ("Texas courts attach greater weight to the operative clauses of a contract than the captions or titles."); *see also Enter. Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (recognizing that in certain cases, courts may consider the title of a contract provision or section to interpret a contract, although greater weight should be given to the contract's operative clauses).

On its face, Lease 2 does not appear to be a renewal or extension of Lease 1. Lease 2 is not titled a "renewal" or "extension"; rather, it is titled, "Apartment Lease Contract," and purports to set out a new agreement by stating, "[T]he initial term of the Lease Contract begins on the 1 day of December, 2004 . . . ." If Centerpoint had intended for Lease 2 to be a renewal of Lease 1, it could have easily labeled it as such or otherwise indicated it somewhere on the contract itself. Heintzelman testified that the majority of Centerpoint's forms were TAA and that Centerpoint had modified the TAA Lease Guaranty Contract "to make the Guaranty what they wanted it to be." She provided no testimony with regard to why Centerpoint could not have labeled any subsequent apartment lease contract a "renewal contract" to fit the language that she testified Centerpoint had added to TAA's Lease Guaranty Contract to create the Guaranty Contract.

8

Furthermore, the Guaranty Contract specifically references Paragraph 3, which provides for automatic renewal, in its list of continuing obligations, stating:

> You agree that your obligations as guarantor will continue and will not be affected by amendments, modifications, roommate changes or deletions, unit # changes, renewals or any lease agreements which may be agreed to from time to time between any of the residents and us *(including month to month renewal in P. #3 of lease.)* [Emphasis added.]

Paragraph 3 in Lease 1 sets out the initial term of the lease and provides, "*This Lease Contract will automatically renew month-to-month unless* either party gives at least 30 days written notice of termination or intent to move-out as required by paragraph 37." [Emphasis added.] Paragraph 3 in Lease 2 requires sixty days' written notice to prevent automatic renewal. Both contracts state under Paragraph 10(5), "Month to month *renewal* in paragraph *#3 continues indefinitely* for cosigners, residents and guarantors until written notice of intent to vacate is given as required by paragraph #37." [Emphasis added.]

Nothing in either lease provides for any sort of renewal other than the month-to-month renewal referred to in Paragraph 3. Under the plain terms of either lease, renewal is automatic; therefore, if Arms had *not* signed Lease 2, Lease 1 would have automatically renewed and Webb's liability would have

9

continued. Instead, Centerpoint and Arms signed Lease 2, which included a different termination term to prevent automatic renewal and different monthly rent in the Addendum. To treat Lease 2 as a renewal would require us to ignore Paragraph 3, which we may not do. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("[E]ach part of the contract should be given effect."). Therefore, we conclude that Lease 2 was a new lease, and not a renewal.

Centerpoint also contends that the Guaranty Contract language, "any lease agreements which may be agreed to from time to time," makes a specific reference to future transactions and should necessarily extend Webb's liability to Lease 2. Webb counters that the "any lease agreements" language in the Guaranty Contract only refers to Lease 1 because the preceding terms in the sentence only reference changes to Lease 1, not new leases. The controversial provision reads as follows:

> You agree that your obligations as guarantor will continue and will not be affected by amendments, modifications, roommate changes or deletions, unit # changes, renewals or *any lease agreements which may be agreed to from time to time* between any of the residents and us (including month to month renewal in P. #3 of lease.) Guarantor is responsible for any holdovers, (paragraph #32 of lease.) If guarantor gives notice to move out, (P.#3 and #37 of lease) and resident renews lease or signs a new lease, guarantor's notice will be considered void. [Emphasis added.]

10

The Guaranty Contract's language contemplates that Centerpoint and Arms might renew, modify, or make changes to Lease 1 during Lease 1's term without voiding the Guaranty Contract, demonstrated by the section entitled "Lease Contract Information," with its specific beginning and ending dates, as well as the language stating that the guarantor guarantees all obligations "under the above Lease Contract," and the language providing for renewals and other changes under Lease 1.

However, we have been unable to find language in the Guaranty Contract that, as a matter of law, would extend Webb's liability as a guarantor beyond Lease 1 to new leases between Arms and Centerpoint without Webb giving "notice to move out." Under that one circumstance, if the resident then "renews lease *or* signs a new lease, guarantor's notice will be considered void." [Emphasis added.][4] Had Centerpoint wanted to expressly include new leases in the Guaranty Contract under any other circumstance, it could have added the word "new" to the clause listing every other type of change to Lease 1:

---

[4] Nothing was produced at trial to show that this exception would apply.

amendments, modifications, roommate changes, unit number changes, renewals, or holdovers.[5]

Therefore, we disagree with Centerpoint's contention that the "any lease agreements" language included or contemplated any future contracts between Arms and Centerpoint. If we were to follow this reasoning, then Lease 1's ending date, which was included in the Guaranty Contract, would be a term rendered meaningless. *See Forbau*, 876 S.W.2d at 133. The words "new lease" are not used anywhere in the "any lease agreements" sentence and the preceding items in that sentence all refer to changes to Lease 1. Additionally, the Guaranty Contract makes multiple references to the "Lease Contract" that is being guaranteed, with a capital L and a capital C; Lease 1 is titled "Apartment Lease Contract," as is Lease 2. However, the sections in the Guaranty Contract that clarify obligations under Lease 1, including the "any lease agreements" section, refer to the lease with a lower case "l"—a clear distinction between the specific "Lease Contract" and any general agreements that might take place under that Lease Contract. *See id.* at 133–34 (reciting the general contract construction rule that the more specific provision will govern the general).

---

[5] Lease 1 and Lease 2 both provide for extension of the lease contract term for holdovers, under Paragraph 32.

We interpret the "any lease agreements" language to simply extend Webb's liability to any lease changes along the lines of amendments or modifications that might occur "from time to time" under Lease 1. *Cf. Blount v. Westinghouse Credit Corp.*, 432 S.W.2d 549, 552–53 (Tex. Civ. App.—Dallas 1968, no writ) (stating that language regarding "agreements . . . in force *or hereafter made*" clearly comprehended guarantor's intent to guarantee obligor's present and future indebtedness in obligor's usual course of business (emphasis added)). Accordingly, we hold that Webb was not liable, as a matter of law, as guarantor under Lease 2. We overrule Centerpoint's sole issue.[6]

## IV. Conclusion

Having overruled Centerpoint's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, HOLMAN, and GARDNER, JJ.

DELIVERED: August 28, 2008

---

[6] Because this is dispositive of Centerpoint's breach of guaranty claim, we need not address that portion of Centerpoint's sole issue. *See* TEX. R. APP. P. 47.1.

13