

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00065-CV

TWI XVIII, INC. AND TEXAS
WINGS, INC.

APPELLANTS

V.

CHRISTOPHER S. CARROLL
NUMBER 1, LTD.

APPELLEE

----------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1] ON REHEARING

----------

We have considered appellants TWI XVIII, Inc. and Texas Wings, Inc.'s motion for rehearing. We deny the motion but withdraw our February 7, 2013 opinion and substitute the following.

---

[1]*See* Tex. R. App. P. 47.4.

Appellants TWI and Texas Wings appeal the trial court's judgment awarding Christopher S. Carroll Number 1, Ltd. (Carroll) $869,950 for TWI's breach of a lease between it and Carroll. We affirm.

**Background Facts**

In June 1998, Carroll and TWI entered into a lease agreement for property in Lewisville, Texas, where TWI planned to operate a Hooters restaurant. TWI operated the restaurant until August 2008. At that time, TWI notified Carroll that it was exercising its option to renew the lease. TWI then offered to buy the premises, but the parties could not agree on a purchase price. The parties then tried to negotiate a fair market rent for the renewal lease term, but they again failed to reach agreement. Because they could not agree on rent, TWI notified Carroll that it would be vacating the leased premises on August 31, 2008.

In January 2009, Carroll sued TWI for breach of contract and sought a declaratory judgment stating that TWI was bound by its renewal of the lease and was obligated to pay rent under the contract. Carroll joined Texas Wings in the action, claiming that Texas Wings had "agreed to guarantee performance of all liabilities, obligations[,] and duties imposed upon Defendant TWI by the Lease."

Carroll then filed a motion for partial summary judgment, which the trial court granted. The trial court found that TWI had exercised its option to renew the lease and that it had breached the lease by vacating the property and failing to pay rent. On November 15 and 16, 2011, trial was held on the remaining

claims. The trial court found in favor of Carroll and ordered that TWI and Texas Wings were jointly and severally liable to Carroll for $869,950.

TWI and Texas Wings filed a request for findings of fact and conclusions of law on December 9, 2011, and a notice of past due findings of fact and conclusions of law on January 6, 2012. The trial court filed its findings of fact and conclusions of law on January 18, 2012. On January 31, 2012, TWI and Texas Wings filed a "Request for Amended and Additional Findings of Fact and Conclusions of Law." They requested that the trial court amend two findings of fact, remove one conclusion of law, file two additional findings of fact, and file additional findings of fact and conclusions of law addressing twelve different issues. The trial court then entered two additional findings of fact and one additional conclusion of law.

On February 14, 2012, TWI and Texas Wings filed another request for additional findings of fact and conclusions of law. They requested additional findings and conclusions on twelve different specified categories of damages. The trial court did not enter any additional findings of fact and conclusions of law. TWI and Texas Wings then filed this appeal.

**Discussion**

**1. Findings of fact and conclusions of law**

In the appellants' first issue, they claim that the trial court committed harmful error by refusing to file findings of fact and conclusions of law specifically related to each of the ten grounds of recovery that Carroll had pleaded.

3

The trial court issued its findings and conclusions on January 18, 2012. Finding number 6 stated, "Based on the evidence at trial, the Court found that [Carroll] had suffered damages as a result of TWI['s] breach of the lease in the amount of $869,950.00 including reasonable and necessary attorneys' fees incurred by [Carroll]." TWI and Texas Wings timely filed a request for amended and additional findings and conclusions stating, "Defendants hereby ask the Court to file additional findings of fact and conclusions of law addressing the following," and listed twelve categories of damages, including unpaid rent, the difference between the amount of rent paid by the replacement tenant and the amount of rent that TWI should have paid, unpaid taxes, late fees, unpaid maintenance fees, broker's commissions, finish-out costs, contractual interest, unpaid premiums, costs, and attorneys' fees.

The court filed additional findings and conclusions that included additional finding of fact number 14, which stated,

> Based on the evidence at trial, the Court found that Plaintiff had suffered damages resulting from TWI['s] breach of the lease including the elements of damage listed below from which the total amount of damages awarded was found. These damages together with Plaintiff's reasonable and necessary attorneys' fees and expenses were aggregated and this aggregated amount was awarded to the Plaintiff in the Court's final judgment. The following elements of damage together with reasonable and necessary attorneys' fees and expenses were considered by the Court in its determination of Plaintiff's total recovery:
>
> A. Unpaid "rent" from September 1, 2008 until Landlord began receiving rent from a replacement tenant . . . .

4

B. The difference between amount of rent paid by [the] replacement tenant and the amount of "rent" that should have been paid by TWI . . . from September 1, 2008 until the end of the renewal term of the Lease. . . .

C. Reimbursement to Plaintiff for unpaid taxes [that] were due from TWI . . . .

D. Late fees [that] had become due under the terms of the lease and which had not been paid by TWI . . . .

E. Unpaid maintenance fees [that] had become due under the terms of the lease and which had not been paid by TWI . . . .

F. Reasonable and necessary Broker's Commissions paid by Plaintiff in obtaining a replacement tenant.

G. Amounts, if any, which in reasonable probability will become due in the future by Plaintiff for finish-out of the property . . . to the extent such reimbursement obligation was reasonably and necessarily undertaken by Plaintiff to obtain a replacement tenant to occupy the Lease premises during the un-expired term of the Lease.

H. Contractual interest [that] had become due under the terms of the lease and which had not been paid by TWI . . . .

TWI and Texas Wings's second request for additional findings of fact requested that the trial court file "additional findings of fact and conclusions of law identifying the specific amount of damages awarded by the Court for each of the" same categories of damages listed in their first request for additional findings and conclusions. This second request was filed twenty-seven days after the trial court signed its original findings of fact and conclusions of law. The second request was therefore untimely under the rules of civil procedure. *See* Tex. R. Civ. P. 298 (requiring requests for additional or amended findings of fact and conclusions of law to be filed within ten days after the filing of the original findings

5

and conclusions by the court). While the rule implies that more than one request may be made, *see id.* (stating that "[e]ach request" for additional findings and conclusions must be served on each party), it also specifies that the timeliness of every request must be calculated from the filing of the original findings and conclusions filed by the trial court. TWI and Texas Wings had the opportunity to specify to the trial court exactly what additional findings and conclusions they wished were filed, and indeed, they took advantage of that opportunity by filing their first request with seventeen specific amendments and additional requests. The trial court filed the additional findings, which directly addressed the appellants' requests. Clearly, the appellants were dissatisfied that the trial court did not itemize its damage award, but their first request for additional findings did not request a specific breakdown, and the trial court was therefore not required to provide one. *See Eikenhorst v. Eikenhorst*, 746 S.W.2d 882, 887 (Tex. App.—Houston [1st Dist.] 1988, no writ) ("Generally, the balance of the appellant's requested findings of fact seek to obtain more specific findings than the court had made in its initial findings. Although the trial court could have made more findings of fact, we can find nothing in [rule] 296 that requires a trial court to make findings of fact with such specificity as the appellant requested in the instant case."). The trial court did not err by failing to file additional findings. We overrule the appellants' first issue.

6

## 2. Unpleaded relief

In their second issue, the appellants argue that the trial court erred in awarding postjudgment interest because Carroll did not plead to recover it. Postjudgment interest is recoverable on any money judgment in this state as long as the judgment specifies the postjudgment interest rate. Tex. Fin. Code Ann. § 304.001 (West 2006); *see RAJ Partners, Ltd. v. Darco Constr. Corp.*, 217 S.W.3d 638, 653 (Tex. App.—Amarillo 2006, no pet.) ("[P]ostjudgment interest is mandated by statute, and is recoverable even if the trial court's judgment does not mention it."). Statutory interest may also be predicated on a prayer for general relief. *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 25 (Tex. 1987). Carroll was therefore not required to specifically plead for postjudgment interest. For that reason, the trial court did not err in granting postjudgment interest; we overrule the appellants' second issue.

## 3. The guaranty

In their third issue, the appellants claim that the trial court erred by finding that Texas Wings guaranteed the lease. The guaranty agreement states,

> In order to induce [Carroll] . . . to execute the Lease Agreement made effective as of the 19th day of June, 1998, (the "Lease") to TEXAS WINGS, INC. for that certain Leased Property situated in the City of Lewisville, Texas, for the operation of a Hooter's restaurant, more particularly described on Exhibit "A" hereto, the undersigned (whether one or more than one) has guaranteed and by this instrument does hereby guarantee the payment and performance of all liabilities, obligations[,] and duties (including, but not limited to, payment of rent) imposed upon Tenant under the terms of the Lease . . . .

7

The appellants argue that the guaranty refers to a lease between Carroll and Texas Wings, but the lease at issue is between Carroll and TWI. They also claim that the lease referred to in the guaranty was to be attached as Exhibit A, but the guaranty that Carroll submitted into evidence has no Exhibit A attached to it.

We construe a guaranty as any other contract. *Mid-South Telecomm. Co. v. Best*, 184 S.W.3d 386, 390 (Tex. App.—Austin 2006, no pet.). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Courts should examine the entire writing "to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* Contact terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id.* "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction [that] is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). We must look at all of the contract's parts together and be "particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).

8

We presume that the parties to a contract intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

The appellants argue that the rule of strictissmi juris requires that the guaranty be strictly construed and that it may not be extended by construction or implication beyond its precise terms. *See Vastine v. Bank of Dallas*, 808 S.W.2d 463, 464 (Tex. 1991). They claim that because the guaranty refers to a lease between Carroll and Texas Wings, it cannot be construed to mean a lease between Carroll and TWI. However, the rule of strictissmi juris only applies when ordinary rules of contract construction render the parties' obligations uncertain or ambiguous. *JMW Partners, L.P. v. Northstar Bank of Tex.*, No. 02-09-00167, 2010 WL 2331399, at *4 (Tex. App.—Fort Worth June 10, 2010, no pet.); *Pham v. Mongiello*, 58 S.W.3d 284, 288 (Tex. App.—Austin 2001, pet. denied). A contract is ambiguous when its meaning is uncertain and doubtful or when it is reasonably susceptible to more than one meaning. *JMW Partners*, 2010 WL 2331399, at *4; *Pham*, 58 S.W.3d at 288. That the parties to a contract disagree over the interpretation of the contract does not necessarily render it ambiguous. *Pham*, 58 S.W.3d at 288. Likewise, uncertainty or a lack of clarity in the language used in the contract does not automatically render it ambiguous. *Id.* And an ambiguity does not arise simply because the parties advance conflicting interpretations; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000); *Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 460 (Tex. App.—Dallas

9

2007, no pet.). An ambiguity exists only after application of established rules of interpretation leaves an agreement susceptible to more than one reasonable interpretation. *DeWitt County Elec. Coop. Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex. 1999).

Looking at the contract as a whole, it is clear that the intent of the guaranty was that Texas Wings would guaranty the lease between Carroll and TWI for the Lewisville Hooter's restaurant. The appellants' construction, that Texas Wings was guarantying its own performance under a lease between itself and Carroll, is not a reasonable interpretation. The guaranty was submitted into evidence as "Exhibit D" to the lease for the Lewisville Hooters. Section 4.1 of the lease states, "As additional security, Texas Wings, Inc., shall irrevocably and unconditionally guaranty [TWI]'s obligation to [Carroll] under this Lease in the form attached hereto as Exhibit "D*."* The lease was signed on June 19, 1998 by John N. Crowder, as President of TWI. Following the lease was Exhibit A, a description of the Lewisville property; Exhibit B, a list of attached personal property on the Lewisville property; Exhibit C, an "Acknowledgment of Rent Commencement Date"; Exhibit D, the guaranty; and Exhibit E, an insurance policy. The guaranty agreement was also signed by John N. Crowder, as Treasurer of Texas Wings, on the same day as he signed the lease. The lease, guaranty, and Exhibits A–D all have a footer that states "Hooter's Lewisville Lease." Further, to construe the guaranty to say that Texas Wings did not guaranty the lease between TWI and Carroll would render meaningless section

10

4.1 of the contract, which states that Texas Wings "irrevocably and unconditionally guarant[eed] [TWI]'s obligation to [Carroll] under this Lease."

The appellants' argument that the guaranty should have had an "Exhibit A" attached to it, which would presumably describe some other Lewisville Hooters leased to Texas Wings, is also unconvincing. The guaranty states that it is applicable to "that certain Leased Property situated in the City of Lewisville, Texas, for the operation of a Hooter's restaurant, more particularly described on Exhibit 'A' hereto." It does not say that there is an exhibit attached to the guaranty; it refers to the Exhibit A to the lease to which the guaranty agreement is attached as Exhibit D. Exhibit A to the lease describes the Lewisville Hooter's location at issue in this case.

Construing the guaranty under the established rules of contract interpretation leaves only one reasonable interpretation, that the lease and the guaranty are part of the same transaction, and we construe them together. *See id.* at 102. The guaranty, signed by Texas Wings, guaranteed TWI's performance under the Lewisville Hooter's lease. We overrule the appellants' third issue.[2]

---

[2]Because we agree with the trial court's conclusion of law number 11—that the guaranty was unambiguous—we do not need to address the arguments raised in the appellants' reply brief that contend that Carroll was required to plead mistake or ambiguity.

## 4. Attorneys' fees

The appellants claim in their fourth issue that Carroll failed to prove the amount of reasonable attorneys' fees that it incurred. They argue that Carroll failed to segregate the recoverable fees from fees for claims for which fees are not recoverable. The appellants did not object at trial, but they did object in their motion for new trial. However, they did not explain which claims should have been segregated or why the fees related to the suit against TWI should have been segregated from the fees related to the suit against Texas Wings.[3] On appeal, the appellants' argument appears to be premised on their contention that Texas Wings was not liable to Carroll for TWI's breach of the contract. We have held, however, that it is. While we acknowledge that if Carroll had not recovered against one party or on one claim, it would have had to segregate its fees absent a showing that the claims were inextricably intertwined, *see NP Anderson Cotton Exchange, L.P. v. Potter*, 230 S.W.3d 457, 467 (Tex. App.—Fort Worth 2007, no pet.), that is not case here.

Carroll sued the appellants for breach of contract and sought declaratory relief, both of which allow for the recovery of attorneys' fees. *See* Tex. Civ. Prac.

---

[3]This is not to say that it was the appellants' burden to demonstrate that segregation was required. The party seeking to recover attorneys' fees bears the burden of demonstrating that segregation was not required. *Clearview Properties, L.P. v. Prop. Texas SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

& Rem. Code Ann. §§ 37.009, 38.001(8) (West 2008). Further, Carroll sued both appellants on the same contract; it sued TWI for its breach of the lease, and it sued Texas Wings because it guaranteed TWI's performance under the lease. Carroll's prosecution of its claims against the appellants "entail[ed] proof or denial of essentially the same facts," *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991), and Carroll was therefore not required to segregate its fees, *see id.* We overrule the appellants' fourth issue.

## Conclusion

Having overruled TWI and Texas Wings's issues on appeal, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DELIVERED: April 11, 2013