**Opinion issued March 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00257-CV

———————————

**JAMES T. DREILING AND SILVEROAK LAND COMPANY, L.P.,
Appellants**

**V.**

**SECURITY STATE BANK & TRUST, Appellee**

**On Appeal from the County Court
Kendall County, Texas[1]
Trial Court Case No. 12-473CCL**

## MEMORANDUM OPINION

---

[1]   The Texas Supreme Court transferred this appeal from the Court of Appeals for the Fourth District of Texas. Misc. Docket No. 14-9074 (Tex. March 18, 2014); *see also* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (authorizing transfer of cases). We are unaware of any conflict between precedent of the Court of Appeals for the Fourth District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Security State Bank & Trust, appellee, sued James T. Dreiling, appellant, for deficiency on a note following a foreclosure. Silveroak Land Company, L.P., appellant, filed a plea in intervention. Security State filed a motion to strike the intervention and a motion for summary judgment on its claim against Dreiling. The trial court granted both motions. On appeal, Silveroak argues the trial court abused its discretion by striking the plea in intervention. Dreiling argues the trial court erred by granting the motion for summary judgment.

We affirm.

## Background

Silveroak obtained a note from Security State. The note was secured by a deed of trust for some real property and was guaranteed by Dreiling. Silveroak and Security State executed three extensions for the note. For each extension, Dreiling signed another guaranty.

Each extension guaranty provides that Security State's rights under all guaranties are cumulative and that, unless specifically provided, no guaranty replaces or extinguishes any other guaranty. The three extension guaranties are largely identical, however. For purposes of this appeal, then, we will refer only to the third extension guaranty.

Under the third extension guaranty, Dreiling agreed to pay "Guarantor's Share of Indebtedness of Borrower to Lender." "Guarantor's Share of

Indebtedness" is defined as "100.000% of all the principal amount, interest thereon to the extent not prohibited by law, and all collections costs, expenses and Lender's reasonable attorneys' fees . . . and . . . any fees and costs for trial and appeals." The guaranty provides that it "is a guaranty of payment and performance and not of collection, so [Security State] can enforce this Guaranty against [Dreiling] even when [Security State] has not exhausted [Security State]'s remedies against anyone else obligated to pay the indebtedness."

Under the guaranty, Dreiling agreed to make all payments "without set-off or deduction or counterclaim." He also agreed that his "[s]hare of indebtedness will only be reduced by sums paid by [Dreiling] under this Guaranty" and that his indebtedness would "not be reduced by sums from . . . reductions by operation of law, judicial order or equitable principles." He further expressly "waive[d] and agree[d] not to assert at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by [Silveroak], [Dreiling], or both." Finally, he agreed "that each of the waivers set forth above is made with [Dreiling]'s full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law."

At some point prior to November 1, 2011, Silveroak defaulted on its note. On November 1, 2011, Security Sate appointed a substitute trustee for the property. The substitute trustee sold the property to Security State. After applying the sale price to the debt, a deficiency of $112,892.91 remained on the note. On October 1, 2012, Security State filed suit against Dreiling to recover the deficiency.

Silveroak filed a plea in intervention and petition for declaratory judgment. In its declaratory judgment action, Silveroak asserted that the foreclosed property was sold for less than fair market value of the property and that, pursuant to the Texas Property Code, it was entitled to an offset of the amount of the deficiency. Silveroak claimed it was required to intervene to "protect its interest and obtain a determination of the balance due on the Note." Later, Silveroak filed a motion for determination of the fair market value of the property.

Security State filed a motion to strike Silveroak's intervention. It also filed a motion for summary judgment on its claim against Dreiling. A hearing was held on both of Security State's motions. The trial court granted both motions, striking Silveroak's intervention and granting summary judgment on Security State's claim against Dreiling.

**Plea in Intervention**

In its issue on appeal, Silveroak argues that the trial court abused its discretion by striking its plea in intervention.

## A. Standard of Review & Applicable Law

Rule 60 of the Texas Rules of Civil Procedure provides, "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. We review the trial court's ruling on a motion to strike an intervention for an abuse of discretion. *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006).

The trial court has broad discretion in ruling on the motion to strike. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). It is an abuse of discretion, however, to strike a plea in intervention if, as it applies to Silveroak, (1) intervernor could defeat some or all of the recovery if the action had been brought against it, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Id.*; *Gator Licensing, LLC v. C. Mack*, No. 04-10-00610-CV, 2011 WL 3502013, at *1 (Tex. App.—San Antonio Aug. 10, 2011, no pet.) (mem. op.).

**B.    Analysis**

Silveroak claims it satisfied the first element of establishing its right to intervention due to Section 51.003 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 51.003 (Vernon 2014). Section 51.003 provides that, for a property sold at to a foreclosure sale, "[i]f the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency . . . ." *Id.* § 51.003(c).

Silveroak asserts that Security State filed its action against Dreiling on the theory that Dreiling had waived his right to seek the offset provided in Section 51.003 against the deficiency claim. Silveroak further asserts that, if it is not able to apply the offset itself to the deficiency claim against Dreiling, then Dreiling will be able to sue Silveroak for the greater amount. This, Silveroak argues, would defeat the protections provided to it under Section 51.003. Accordingly, Silveroak argues, the intervention was essential to effectively protect its interest. *See Guar. Fed.*, 793 S.W.2d at 657.

This argument is premised on Silveroak's claim that it would not be able to assert the offset defense against Dreiling if Dreiling sues it for the deficiency he was required to pay on Silveroak's behalf. Section 51.003(c) provides that "*the persons against whom recovery of the deficiency is sought are entitled to an offset*

6

against the deficiency . . . ." TEX. PROP. CODE ANN. § 51.003(c). The focus of the statute is on who can assert the defense, not on who brings the action. If Dreiling sued Silveroak, Silveroak would be the person against whom recovery of the deficiency is sought. Accordingly, it is still entitled to invoke the protections of Section 51.003.

Silveroak attempts to show that Section 51.003 only applies in an action brought by the lender by citing to text in the legislative history of the enactment of Section 51.003. Because Silveroak has not identified any ambiguity in the plain text of Section 51.003, we may not look beyond its plain text to the legislative history to determine a contrary meaning. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) (holding "[w]hen a statute's language is clear and unambiguous it is inappropriate to resort to the rules of construction or extrinsic aids to construe the language.").

Silveroak also relies on a San Antonio Court of Appeals opinion, claiming the opinion supports its claim that Section 51.003 only applies to actions brought by the lender. *See Ray & Associates, P.C. v. SMS Fin. II, L.L.C.*, No. 04-01-00449-CV, 2002 WL 997663 (Tex. App.—San Antonio May 15, 2002, no pet.) (mem. op.). *Ray* has no application to this case, however. In *Ray*, the note in question "was not collateralized by real property." *Id.* at *1. Accordingly, the court held that section 51.003 did not apply to the parties. *Id.* at *3.

7

In another argument, Silveroak claims that "there can be no finding as to [Dreiling]'s liability under the Guaranty until [Silveroak]'s remaining liability under the Note is first established." Without some showing that such a determination would be binding or otherwise harmful to Silveroak, however, this does not establish that striking the intervention was an abuse of discretion. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (requiring, as element of res judicata, proof of "identity of parties or those in privity with them").

Finally, Silveroak argues that striking its plea in intervention "contravenes Texas policy by causing excessive litigation. Silveroak argues that the court has been "effectively . . . forced to consider the same case twice in the event of a subsequent suit by [Dreiling] against [Silveroak]." Silveroak was not seeking to intervene to have the court determine Silveroak's liability to Dreiling, however. Instead, Silveroak was seeking to intervene to have the court determine Silveroak's liability to Security State. Even if the trial court had permitted the intervention, then, any claim by Dreiling against Silveroak would have remained unresolved.

We overrule Silveroak's issue.

**Summary Judgment**

In his issue on appeal, Dreiling argues the trial court erred by granting the motion for summary judgment.

8

## A.    Standard of Review

The summary-judgment movant must conclusively establish its right to judgment as a matter of law.  *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).  Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo.  *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a "traditional" summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law.  *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When a party moves for summary judgment on a claim for which it bears the burden of proof, it must show that it is entitled to prevail on each element of its cause of action.  *See Parker v. Dodge*, 98 S.W.3d 297, 299 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  The party meets this burden if it produces evidence that would be sufficient to support an instructed verdict at trial.  *Id.*

To determine whether there is a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable

9

jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller,* 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

## B.     Analysis

A lender bringing an action for a breach of a guaranty agreement must establish "(1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720 (Tex. App.—San Antonio 2004, no pet.); *accord Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 205 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Dreiling presents a number of arguments for why Security State had failed to meet its summary judgment burden. All of the arguments, however, are premised on the same legal proposition: the underlying contract between Silveroak and Security State controls the extent of Dreiling's liability. Based on this proposition, Dreiling argues that, because Silveroak can claim an offset to the deficiency

pursuant to Section 51.003 of the Texas Property Code, Dreiling also must be allowed to claim the offset.[2]

It is certainly true that, "[s]ince a guaranty is ancillary to the underlying contract, a dispute as to the rights and obligations of the guarantor can only be resolved by a factual determination of the rights and obligations of the parties to the underlying contract." *Republic Nat'l Bank of Dal. v. Nw. Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 114 (Tex. 1978). It is also true, however, that the guarantor's liability on a debt is measured by the principal's liability only to the extent that "the guaranty agreement itself sets forth a more extensive or more limited liability." *84 Lumber Co., L.P. v. Powers*, 393 S.W.3d 299, 308 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *accord Pham v. Mongiello*, 58 S.W.3d 284, 288 (Tex. App.—Austin 2001, pet. denied); *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 110 (Tex. App.—Dallas 1987, *writ ref'd n.r.e.*); *see also Lee*, 141 S.W.3d at 721 (holding liability under guaranty is determined by

---

[2] In one of his arguments, Dreiling asserts that the evidence is insufficient to establish Dreiling's liability under the guaranty because the evidence is insufficient to establish Silveroak's liability under the note. To the degree Dreiling asserts this claim independent of his claim that he should be permitted to seek an offset under the Property Code, this argument also fails. An affidavit in Security State's motion for summary judgment identifies the amount of the original loan, the sale price of the property, and the amount owing after the sale. A second exhibit detailed every charge and payment applied to the loan amount. A third exhibit identified the expenses incurred in the sale, the calculation of Security State's bid price, and the calculation of the deficiency by subtracting the foreclosure amount from the principal balance, accrued interest, and expenses incurred. We hold this is sufficient to identify Silveroak's liability without regard to any legal offsets. Accordingly, it is sufficient to identify Dreiling's liability.

examining terms of guaranty). Accordingly, we consider the underlying agreement in the context of the terms of the guaranty.

Here, Dreiling agreed under the guaranty to pay "Guarantor's Share of Indebtedness of Borrower to Lender." "Guarantor's Share of Indebtedness" is defined as "100.000% of all the principal amount, interest thereon to the extent not prohibited by law, and all collections costs, expenses and Lender's reasonable attorneys' fees . . . and . . . any fees and costs for trial and appeals." Dreiling agreed to make all payments "without set-off or deduction or counterclaim." He also agreed that his "[s]hare of indebtedness will only be reduced by sums paid by [Dreiling] under this Guaranty" and that his indebtedness would "not be reduced by sums from . . . reductions by operation of law, judicial order or equitable principles." He further expressly "waive[d] and agree[d] not to assert at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by [Silveroak], [Dreiling], or both."

Under the terms of the guaranty, then, Dreiling waived his rights to the offset permitted by Section 51.003 of the Texas Property Code. *See Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014) (holding parties can contractually waive rights afforded under Section 51.003 of Texas Property Code). This expanded his liability from the extent of liability set forth in the underlying

12

agreement, which the parties agree did not contain such a waiver. Accordingly, Dreiling cannot claim any rights to offsets he expressly waived in his guaranty agreement. *See 84 Lumber Co.*, 393 S.W.3d at 308; *Lee*, 141 S.W.3d at 721.

Dreiling provides no legal authority for this assertion that, because Silveroak did not waive the offset, he is permitted to assert the right to offset on Silveroak's behalf and to have the offset apply to him. A guaranty can make the liability of the guarantor greater than the liability the borrower would face. *See 84 Lumber Co.*, 393 S.W.3d at 308. It can also waive rights to offset. *See Moayedi*, 438 S.W.3d at 6. We would render those legal precepts meaningless if we were to hold that a guarantor can assert a right it expressly waived simply because the borrower did not waive that right.

Dreiling's reliance on *Estate of Todd* is unfounded. *See Estate of Todd v. Int'l Bank of Commerce*, 01-12-00742-CV, 2013 WL 1694937 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, pet. filed) (mem. op.). In *Estate of Todd*, the bank asserted that it was permitted to recover the amount owing under the note without applying the value of the property sold at the foreclosure. *Id.* at *1. The issue on appeal was whether the guaranty provided an independent method for ascertaining the guaranty liability to avoid deduction of the foreclosure sale money from the amount remaining on the notes. *Id.* at *4. We rejected this argument based on the plain language of the guaranty. *Id.* at *5. No party asserted the right

to a statutory offset, and the guaranty did not waive the right to assert such an offset. *See id.*

We overrule Dreiling's issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Huddle.